GEORGE STETSON and another, appellants, vs. CITY OF BANGOR.

Penobscot. Opinion May 1, 1882.

*Ways. Dedication. Damages. Appeal. Practice.*

Where a way is laid out upon land which had been dedicated to the public, an appeal cannot be sustained in behalf of the owner of the fee from an award of nominal damages, only.

ON REPORT.

Appeal from the doings of the authorities of the city of Bangor, in laying out so much of York street as is westerly of Exchange street in Bangor, where one dollar was allowed as land damages. The appeal to the Supreme Judicial Court only relates to damages. By the terms of the report if the appeal can be sustained the cause is to stand for trial.

*Charles P. Stetson*, for the plaintiffs.

The city claims that there was a dedication of the locus, or part of it, by the original proprietors, and that according to the principles laid down in *Stetson* v. *Bangor*, 60 Maine, 313, and in *Bartlett* v. *Bangor*, 67 Maine, 460, appellants are not entitled to damages. Our answer to that is that the case at bar differs from those cases in that the appellants in this case had made valuable erections upon the premises—a wharf and buildings, and had maintained them, having an adverse, uninterrupted, open and exclusive possession by themselves and their tenants from 1845 or 1846, to the time of the laying out, a period of some twenty-seven years.

We think that the weight of the authorities sustains the position that the claim of a city in a street or land dedicated for a street, may be barred by a non-user and by adverse possession. 3 Kent's. Com. 451, note; 2 Dillon on Municipal Corporations, § 668; *Cincinnati* v. *Evans*, 5 Ohio, 594.

In *Bartlett* v. *Bangor*, page 466 of 67 Maine, Judge WALTON says: "And such right of way is not lost by mere non-use. An adverse use, such as placing upon the land buildings or other

permanent obstructions to all possible travel over it if acquiesced in for a sufficient length of time might have that effect."

I refer also to *Knight* v. *Heaton*, 22 Vermont, 480 ; *Webber* v. *Chapman*, 42 N. H. 332.

Another and different question arises as to part of the land taken by the location of the street, namely, the strip six and one-half feet in width, extending from Exchange street to the stream. This strip is outside of the street opening as laid down on the original plan and the appellants are entitled to damages for this parcel unless barred by the bond given by them in 1845.

It will be noticed that this bond provides as follows : "And it is agreed that neither this obligation nor said city order shall be used in evidence in any action now pending or which may be hereafter pending to try the question of public way, highway or town way or any other easement over that part of York street west of Exchange street."

This case is to be decided upon such testimony as is legally admissible.

This bond is not legally admissible and cannot therefore be used or considered in the case, and cannot bar appellants' right to recover damages for the six and a half feet. *Copeland* v. *Taylor*, 99 Mass. 615 ; 1 Greenleaf on Evi. § 192.

*T. W. Vose*, city solicitor, for the defendant, cited : *Stetson* v. *Bangor*, 60 Maine, 313 ; *Bartlett* v. *Bangor*, 67 Maine, 460 ; *Commonwealth* v. *Blaisdell*, 107 Mass. 234 ; 2 Dill. Mun. Corp. (2d ed.) § § 512, 530, 513 ; *St. Vincent Orphan Asylum* v. *Troy*, 32 Am. R. 286, (S. C. 76 N. Y. 108) ; Washburn on Easements, 556 ; *Farrar* v. *Cooper*, 34 Maine, 394 ; *Davis* v. *Bangor*, 42 Maine, 522 ; *Abbott* v. *Abbott*, 51 Maine, 575 ; *Simmons* v. *Cornell*, 1 R. I. 519.

SYMONDS, J. The principles on which *Stetson* v. *Bangor*, 60 Maine, 313, and *Bartlett* v. *Bangor*, 67 Maine, 460, were decided, applied to the facts of this case, establish a dedication to the public of York street in Bangor, as delineated on the original proprietors' plan, in 1810, sixty feet wide, and extending easterly from the Kenduskeag river, at all stages of the tide, beyond the point where the appellants claim damages for the

new location in 1873. The same cases hold that the opening of a public street over land so dedicated authorizes an award of nominal damages only to the land owner. This is not denied. But it is sought to distinguish the present case from those cited, on the ground that, in 1873, the possession of the premises by the appellants had been of such a character, and for such a length of time, as to defeat the original dedication and extinguish the public right, and thereby entitle them to recover the full value of the land included within the limits of the new location of the street in that year.

Where, as here, the limits of land dedicated to public use can be made certain by records or monuments, it would seem that under our statute, R. S., c. 18, § 76, a period of at least forty years must elapse to give any adverse right of possession; that even buildings or fences fronting on such land will not be deemed the true boundaries, as against records or monuments, unless they have been there so long. In this case, occupation of any part of the land by buildings or other erections for twenty-seven years is the extent of the appellants' claim.

The statute cited is the only one in this state which in this respect limits the common law force of the maxim, *Nullum tempus occurrit regi.* Broom's Legal Maxims; *Comm.* v. *Blaisdell,* 107 Mass. 234; *Cutter* v. *Cambridge,* 6 Allen, 20.

Except for this statute a period of sixty years, under earlier statutes which are part of our common law, would at least be required to bar such public right.

But the questions, what length of time is required to extinguish the public easement in land fully dedicated to the public, and was there such a complete dedication, accepted by the public, are not necessarily involved in the decision of this case. There was at least the incipient dedication defined in *Bartlett* v. *Bangor, supra,* which gave irrevocably to the purchasers of lots a right of way in the streets laid down upon the plan, and when "land thus already burdened with a perpetual and indefeasible right of private passage over it is taken for a public street, the owner is entitled to no more than nominal damages." Moreover, if the period of limitation were fixed at twenty years, so that such an incipient dedication might be defeated by the permanent obstruc-

tion of the way by buildings or otherwise, acquiesced in for that time, the evidence in this case would not sustain the claim that the right of way in the street as originally marked on the proprietors' plan had been lost.

The appellants have not been in exclusive possession since the deed to them in 1845. Their occupancy has been to a large extent consistent with all the purposes for which the way was required. The wharf at the river end of the street can scarcely be regarded, under the circumstances disclosed, as a permanent obstruction of travel. The public right has always been exercised more or less. The encroachments upon it have been repeatedly resisted. The street commissioner has entered upon the premises in different years and several times hauled in gravel to keep the way in repair. By direction of the city council he threw down a wall that the appellants were building within the limits in 1845. The whole subject has been one of contention and conflicting claims, of negotiation or of litigation, from that time to the present. Indictments for obstructing the way were found against the appellants in 1847, and were pending till 1853. The appellants had a right to make such use of the land as was not inconsistent with the public right of way. We think there has been no period of even twenty years when their possession, beyond the limits of this rightful use, has been exclusive, peaceable, uninterrupted, or in any sense by acquiescence of the city or public.

So far, then, as the way located in 1873 was within the limits of York street on the original plan, it was over land dedicated to the public, and the appeal from the award of nominal damages only cannot be sustained.

The arrangement, proposed by the appellants in August, 1845, and accepted by the city, by which the public easement over a strip six and one-half feet wide on the southerly side of York street between Exchange street and the river was discontinued, and a strip of equal width was added to the northerly side of the street, from the lands of the appellants, was a new dedication of land to the public. The discontinuance was procured upon the offer and promise of the appellants to substitute the same width of land on the opposite side; and upon their bond conditioned "to allow said city and the public the same right of

use in six and one-half feet extending northerly from the northerly line of York street . . . . that the said city or public now has to York street."

The doctrine of estoppel lies at the basis of all dedications, and makes them irrevocable. The appellants could not by their act, by their agreement to widen the street northerly out of their own lands, induce the city to narrow it on the south, erect buildings upon the part so discontinued, and then successfully deny the right of way over the substituted strip of land. They agreed to dedicate and did dedicate the six and one-half feet on the north to the public, to the same extent to which it should be legally determined that York street was dedicated. The city accepted that agreement and acted upon it, allowed the appellants the full benefit that accrued to them therefrom, and now rightfully assert the public easement in the new dedication which was received in exchange for the surrender of the old.

It is true that neither the bond nor the proceedings of August, 1845, are to be "used in evidence in any action now pending or which may be hereafter pending to try the question of public way, highway, town way or any other easement," in York street.

We do not use them for that purpose. Whether York street was a way dedicated to the public in such sense as to preclude the recovery of more than nominal damages on this appeal, or not, we determine without reference to this agreement to narrow on the south and widen on the north. But having decided that question on distinct grounds, we then find that the proceedings of August, 1845, give the city and the public the same rights in the strip added on the north, as previously they had within the limits of York street; namely, the right of public way by dedication.

None of the appellants' land, except that so dedicated, having been included in the location of 1873,

> *The appeal from the award*
> *of nominal damages is*
> *dismissed.*

Appleton, C. J., Barrows, Virgin, Peters and Libbey, JJ., concurred.