Rockingham, }
June, 1899. }

### ATTORNEY-GENERAL (*ex rel.* PEARSON *& a.*) *v.* FOLSOM.

In the absence of statutory provision, the legal voters at a town meeting have authority to dictate the time at which the polls shall be closed.

Under Laws 1897, *c.* 78, *s.* 18, the moderator at a town meeting cannot receive the ballot of an elector offered within the guard-rail after the polls have been closed, and while the ballots are being counted.

INFORMATION, in the nature of a *quo warranto*, to determine the right of the defendant to the office of supervisor of the check-list for the town of Epping. Facts agreed. At the biennial meeting of the town in November, 1898 (which was opened at ten o'clock A. M.), the polls were declared closed by the moderator at about four o'clock in the afternoon, in accordance with a vote then duly passed, and the election officers began the work of assorting and counting the ballots. For a short time before this no ballot had been offered. At the other biennial meetings held in the town since 1892, the polls were closed at six o'clock P. M. About an hour after the polls were closed, while the officers were still engaged in assorting and counting the ballots and before they had learned the results, a legal voter of the town, who had been temporarily absent and had just arrived at the meeting, was allowed to vote, notwithstanding the protest of one of the ballot inspectors. He voted for the defendant for supervisor. No other ballot was received after the polls were closed. The result of the ballot for third supervisor was a tie,— one of the relators and the defendant each having 180 votes. The moderator declared that there was no choice for this office. The

meeting was adjourned to a later date, when, upon a ballot, the defendant received a plurality of the votes cast and was duly declared elected to the office. He has taken the oath of office and entered upon the discharge of its duties.

*Edwin G. Eastman*, attorney-general, for the plaintiffs.

*John T. Bartlett*, for the defendant.

BLODGETT, C. J. Chapter 78, Laws 1897, relating to the manner of conducting elections, provides (*s.* 18) that "immediately after the polls are closed the ballots shall be examined, and the votes . . . shall be counted by the moderator, in the presence of the town clerk, the selectmen, and the other election officers herein provided;" that "the counting shall be public, but within the guard-rail, and shall not be adjourned nor postponed until it shall have been completed;" and that, while the ballots are being counted, "only the aforesaid officers shall be allowed within said inclosure."

The issue raised by the facts turns upon the legality of the single ballot in question under the above statute; and the illegality relied upon is that, subject to protest, the voter was admitted within the guard-rail, and cast the ballot after the polls had been closed and while the ballots were being counted.

All of these acts are manifestly in plain violation of the statute and subversive of its purposes; and no question of their existence is raised if the closing of the polls was within the authority of the meeting.

In many of the states there are statutory provisions prescribing the time when the polls shall be closed at elections, but in this state no such provision exists, except in the case of cities. Nor is authority conferred upon any town official to fix such time. P. S., *c.* 42, *s.* 5; *Hill* v. *Goodwin*, 56 N. H. 441, 447. The regulation of that matter is therefore necessarily left to the voters themselves; and when their discretion is fairly and reasonably exercised, as it appears to have been in the present case, the time fixed by them must be regarded as one of the reasonable and necessary regulations and limitations required in the proper exercise of the right of suffrage, against which no elector has any constitutional or other right to complain. In New England town meetings the voters are the sovereigns, and their will, when duly expressed, is supreme.

Finding, as we do, that the polls were legally closed, the relator is entitled to prevail. The moderator not only had no right to receive the protested ballot, because the polls had been closed, but also because it was cast while the ballots were being counted, and by a party within the guard-rail. True, the effect

was not to invalidate the election generally (for the rule every-where obtains that an election is not to be set aside and declared void merely because of illegal votes which do not change the result); but this is immaterial, because it affirmatively appears that the effect of the acts complained of was to change the result of the election as to the contesting relator and to his prejudice, and that is enough for the present purpose. *Judkins* v. *Hill*, 50 N. H. 140, 142, and authorities cited; *Prince* v. *Skillin*, 73 Me. 361,— 36 Am. Rep. 325, 333; *People* v. *Bates*, 11 Mich. 362,— 83 Am. Dec. 750, note.

                                                        *Information granted.*

All concurred.