16

GATES MILLS INVESTMENT CO., APPELLEE, *v.* PARKS ET AL., APPELLANTS.

(No. 69-724—Decided February 3, 1971.)

*Messrs. Rini & Hecht, Mr. Martin A. Rini* and *Mr. Donald L. Goldman,* for appellee.

*Messrs. Baker, Hostetler & Patterson, Mr. Richard R. Hollington, Jr., Mr. Oakley V. Andrews, Mr. John T. Corrigan* and *Mr. Robert L. Musser,* law director, for appellants.

I

*The Proposed Subdivision*

DUNCAN, J. Gates Mills Boulevard is a divided highway running through the village of Pepper Pike. An undedicated median strip of land 100 feet wide divides the two dedicated 60-foot-wide roadways of the boulevard. A portion of the median strip between Brainard Circle and Lander Circle, approximately one mile long, is the land appellant proposes to subdivide.

The Van Sweringen Company, the original developers of the general area in the 1920's, intended that the median strip of Gates Mills Boulevard be used for a railway to provide transportation for residents of the area to and from the central city (Cleveland). Although a rapid transit rail system exists, it has not been extended to the land in question. The point of extension nearest the median strip (Green Road) was completed in 1936.

Appellee's predecessor in title purchased the land in a foreclosure proceeding in 1962 for $5,000. Title was transferred to Gates Mills in 1965. The company proposes to subdivide the property into 13 lots and to construct a single-family dwelling upon each lot. The contemplated residences are to face perpendicular to the boulevard, each lot having dimensions of 100 feet in width, by at least 500 feet in length.

## II
### The Planning Commission

On March 3, 1965, after a hearing, the commission rejected the application for approval of the plat for recording. Pursuant to R. C. 711.09, appellee filed a petition in the Court of Common Pleas. That section requires that the *planning authority* refusing to approve the plat be made a party defendant, and that it file an answer in which it may set forth a statement of the facts justifying its refusal to approve a plat, a copy of *its* rule or regulation under which it refused to approve, and a statement of the facts supporting the reasonableness and lawfulness of such rule or regulation.*

The commission's amended answer states, in part, that "the proposed plat as modified fails to meet the requirments of Ordinance 1963-59 (known as the Zoning Ordinance) * * * in the following respects:

---

*R. C. 711.09 provides, in part, as follows:

"* * * The planning authority refusing to approve such plat and the recorder of the county shall be joined as defendants and summons shall be issued upon such defendants as in civil actions. Within the rule day provided for a civil action the planning authority may file an answer in which it may set forth a statement of the facts justifying its refusal to approve such a plat, a copy of its rule or regulation under which it refused to approve such plat, and a statement of the facts supporting the reasonableness and lawfulness of such rule or regulation. The court shall hear the matter upon such evidence as is introduced by either party and the planning authority may introduce as a part of its case a complete transcript of any proceedings had before it. Any detail of the plat may be modified upon motion of the plaintiff before the cause is submitted to the court. If the court finds that the prayer for the recording of such plat or any modification thereof as may be agreed to or proposed by the plaintiff, is supported by a preponderance of the evidence, it shall enter an order directed to the recorder to record such plat as originally submitted or as agre  to be modified. Otherwise, the petition shall be dismissed. The court shall return a separate finding upon the reasonableness and lawfulness of the refusal to approve the plat or upon the reasonableness and lawfulness of the rule or regulation under which the planning  authority refused to approve the same or both, as the case may require. The judgment or order of the court may be appealed by either party on questions of law as in other civil cases."

"(a) Average width of lots is less than 125 feet at the building line.

"(b) Size of lots does not permit for 75-foot set back from Gates Mills Boulevard.

"(c) Sublots on proposed plat do not meet the side yard and rear yard requirements."

The amended answer also states that the action in refusing the plat was based upon failure to comply with the requirements of Ordinance 1962-8, which provides rules and regulations for subdividing lands within the village. Ordinance 1962-8 incorporates certain parts of the Zoning Ordinance (1963-59), by stating:

"1. *The Area and Width of Lots shall be not less than required by the Zoning Code*, and shall be appropriate for the neighborhood and type of development proposed. * * *" (Emphasis added.)

The amended answer does not set forth any plan *adopted by the commission* as a basis for refusing the plat.

### III
#### The Trial Court

Upon trial, the court found that the proposed subdivision has the attributes of propriety and reasonableness, and that the zoning and subdivision ordinances are unconstitutional, unreasonable, and unlawful as applied to the appellant. Review in the Court of Appeals was based upon the correctness of the trial court in making such findings.

### IV
#### Jurisdiction

The question of the trial court's jurisdiction under R. C. 711.09 was raised for the first time in this court by the appellants who claim that the trial court lacked jurisdiction to pass on the constitutionality of a zoning ordinance in a proceeding under R. C. 711.09. Appellee argues that appellants placed in issue the reasonableness and lawfulness of the Zoning Ordinance, and that they (appellants) are thus estopped from challenging the court's jurisdiction to determine that issue.

The failure of a litigant to object to subject-matter

jurisdiction at the first opportunity is undesirable and procedurally awkward. But it does not give rise to a theory of waiver, which would have the force of investing subject-matter jurisdiction in a court which has no such jurisdiction. See Civil Rule 12(H); R. C. 2309.10; and *Jenkins* v. *Keller* (1966), 6 Ohio St. 2d 122. Therefore, a review of the trial court's jurisdiction of the subject of the action under R. C. 711.09 is necessary. It is not contested that the trial court had basic jurisdiction of the subject matter. That section states: "Within sixty days after such refusal, the person submitting any plat which the commission * * * refuses to approve may file a petition in the Court of Common Pleas of the proper county, in which he shall be named plaintiff." The refusal of the plat by the planning commission and the timely filing of a petition satisfy the jurisdictional requirements of the statute.

However, appellants' claim is that R. C. 711.09 does not confer subject-matter jurisdiction upon a Court of Common Pleas to consider the validity or constitutionality of a municipal zoning ordinance. They appear to concede that the subdivision ordinance (1962-8) is within the purview of a "rule or regulation" of a planning commission and subject to review, but argue that reference to the Zoning Ordinance (1963-59) in the subdivision ordinance does not make the latter ordinance subject to review under R. C. 711.09. Because of our conclusion herein, we do not reach that issue.

## V

### R. C. 711.09

Even more basic than the jurisdictional issue raised by appellants is the question whether, under R. C. 711.09, the legislative authority of a village which has a planning commission can, by ordinance, provide a plan or rules and regulations to be utilized by that commission in determining the recordability of a plat. In the instant case, the legislative body of the village, by the enactment of a subdivision ordinance (1962-8) which refers to the Zoning

Ordinance (1963-59), has attempted to provide rules and regulations for the planning commission. The record does not indicate that the commission *itself* has adopted any plan or rules and regulations.

Under R. C. 711.09, the legislative authority of a village which has a planning commission cannot legislate a plan or rules and regulations governing plats and subdivisions of land. Moreover, the utilization of the ordinance as a ground for the refusal of the plat cannot amount to the statutorily contemplated *adoption of a plan* by the commission as required by statute.

The second paragraph of R. C. 711.09 reads:

"Whenever a village planning commission, platting commissioner, *or, if there is no commission or commissioner*, the legislative authority of a village, adopts a plan for the major streets or thoroughfares and for the parks and other public grounds of such village or *any part thereof*, then no plat of a subdivision of land *within such village* shall be recorded until it has been approved by the village commission, commissioner, *or* legislative authority and such approval indorsed in writing on the plat." (Emphasis added.)

A reading of all paragraphs of the statute as a whole provides the basis for our conclusion that the village legislative authority can only adopt a plan *"if there is no commission or commissioner."*

Appellee argues that such a conclusion is foreclosed by the following language set forth in the fourth paragraph of R. C. 711.09:

"The planning commission, platting commissioner, *or legislative authority of a village may adopt general rules and regulations governing plats and subdivisions of land* falling within its jurisdiction in order to secure and provide for the co-ordination of the streets within the subdivision with existing streets and roads or with the plan or plats of the municipal corporation, for the proper amount of open spaces for traffic, circulation, and utilities, and for the avoidance of future congestion of population

detrimental to the public health or safety but shall not impose a greater minimum lot area than forty-eight hundred square feet." (Emphasis added.)

Appellee contends that this last-quoted language of the statute is generally applicable to rules and regulations governing plats and subdivisions, and grants the planning commission, platting commissioner, *or* legislative authority *alternative* power to adopt a plan or rules and regulations. Such an interpretation would then have to be reconciled with the above-quoted language of paragraph two of the statute, and the only way the two provisions could be wedded would require that the quoted language of paragraph two be construed to limit the adoption of plans for "major *streets* or *thoroughfares* and for the *parks* and other *public grounds* of such *village* or any part thereof." Under such a construction, the phrase "or any part thereof" would refer to, and be limited to, streets, thoroughfares, parks, and public grounds, and would obviously *exclude* all other land within the boundaries of the village.

We reject the position that this was the intent of the General Assembly in enacting the statute. For a number of reasons, such a restricted interpretation would impair the procedure for processing subdivision plats to the extent that the statute would be procedurally incomplete. First, we consider the approval procedure.

Looking again to paragraph two of R. C. 711.09, the language providing for the *approval* of plats immediately follows the words we interpret; in part it reads: "* * * a plan for * * *streets or thoroughfares * * * parks * * * public grounds of such village or any part thereof, then no plat of a subdivision of land *within such village shall be recorded until it has been approved* * * *." (Emphasis added.) There is no other provision in the statute regarding the procedure for approval of village subdivision plats. Therefore it follows that the language, "plat of a subdivision of land *within such village*," is intended to include *all* land within the village. Otherwise, there would

be no statutory provision for the approval of plats, *other than* those involving plans for streets, thoroughfares, parks, and public grounds, and no procedure for approval of plats for the remainder of the land in a village. We believe that the use of the adjective "such," as applied to a village, describes the entire village when used in paragraph two of this statute. The phrase "or any part thereof" refers to the entire village.

Stated another way, a construction of paragraph two of the statute which would limit the scope of its application to plans relating to streets, thoroughfares, parks and other public grounds, would render the provision requiring approval of a plat applicable only and limited to plans regarding those specific areas. From that hypothesis, it would logically follow that there would be no statutory provision for approval of a plat of a subdivision of the remainder of the land within the village.

An examination of the first paragraph of R. C. 711.09 buttresses our interpretation of the meaning of the second paragraph, which provides for the adoption of plans for a *city*. There is *no* provision for a city's legislative authority to adopt a subdivision plan, but only for the city planning commission to do so. The statute states:

"Whenever a city planning commission adopts a plan for the major streets or thoroughfares and for the parks and other open public grounds *of a city or any part thereof*, or for the unincorporated territory within three miles of the *corporate limits thereof or any part thereof*, then no plat of a subdivision of land within such city or territory shall be recorded until it has been approved * * *." (Emphasis added.)

The context of that provision clearly is inclusive of the land within the entire city and certain unincorporated territory. A contrary interpretation, such as appellants urge here, would provide for a plan, or rules and regulations which included only limited areas within the city (streets, thoroughfares, parks, public grounds), without provision for the majority of land located within the

city, or for the unincorporated territory within a three-mile limit.

In reviewing R. C. 711.09, we note that the phrase, "or any part thereof," is used both with respect to a city and with respect to a village. Therefore it seems reasonable that the same construction was intended to be applicable to both a city and a village.

The term "planning authority" is found in R. C. 711.09; "* * * the planning authority may file an answer in which it may set forth * * * a copy of *its* rule or regulation under which it refused to approve such plat. * * *" That term connotes one person or agency to act as a planning authority with *its* rules or regulations. We believe that the General Assembly only contemplated that either a planning commission, a platting commissioner or, if a village had neither, the legislative authority of a village should act to adopt *one* plan.

Because of the size of a village, we reason that the General Assembly was attempting to provide a procedural vehicle for the processing of subdivision plats in those instances where the political organization was not so sophisticated as to have a planning commission or a platting commissioner.

Reflection on the posture of the law, if interpreted to permit both a village legislative authority *and* a commission or commissioner to adopt a plan or rules and regulations, reveals that the result could possibly be two conflicting schemes for the same village. The existence of more than one plan, resulting from co-existing authority to adopt plans, would require that a person attempting to record a plat choose not only which plan to attempt to satisfy, but also which public agency to file the plat with. Such a result would be intolerable.

Inasmuch as the village of Pepper Pike had a planning commission at all times concerned herein, the *only* plan for platting a subdivision which could be adopted under the provisions of R. C. 711.09 is one that was adopted by that commission. The subdivision ordinance (1962-8)

cannot be used as a standard by which a proposed plat of a subdivision can be examined as a condition to recording.

Under R. C. 711.09, if a village has a duly elected or appointed planning commission or platting commissioner, the legislative authority of that village cannot adopt a plan or rules and regulations governing plats and subdivisions of land.

A village planning commission which has not adopted a plan or rules and regulations governing plats and subdivisions of land, as here, acts unreasonably and unlawfully in refusing to approve an application to record a plat for the reason that the plat does not conform to the provisions of a village ordinance.

In view of the fact that the appellants' defense that the refusal of appellee's plat was not in conformity with a village ordinance is not cognizable under R. C. 711.09 for the reason stated hereinabove, the trial court erred in considering it.

We make no finding concerning the Zoning Ordinance (1963-59), or its applicability to, and effect on, appellee's proposed plat. We leave that for adjudication in a proper action.

The judgment of the Court of Appeals is affirmed for the reason that appellant commission's refusal to approve the plat was based on village ordinances which cannot be so utilized under R. C. 711.09.

*Judgment affirmed.*

O'NEILL, C. J., SCHNEIDER, HERBERT, GUERNSEY, STERN and LEACH, JJ., concur.

GUERNSEY, J., of the Third Appellate District, sitting for CORRIGAN, J.